# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARK ANTHONY THOMPSON** | : | **DOCKET NO. 19-cv-0252** |
| **REG. # 44671-379** | | **SECTION P** |
| **VERSUS** | : | **JUDGE FOOTE** |
| **ERIC LINK, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is the Report and Recommendations of the Magistrate Judge, [Record Document 8], to which Plaintiff Mark Anthony Thompson ("Thompson") has objected, [Record Document 9].[1] Because the *Heck* bar might not apply to the search of which Thompson complains and because the Court lacks the facts necessary to evaluate the Fourth Amendment issues presented, this Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendations. The *Heck* bar applies to any alleged misconduct during Thompson's trial, and so the Report is **ADOPTED** as to Defendants Judge Patricia Minaldi ("Judge Minaldi"), Myers P. Namie ("Namie"), and John L. Walker ("Walker"). The Report is also **ADOPTED** as to Defendant Eric Link ("Link") for conduct that occurred during and in preparation for Thompson's trial. This Court **CONCURS** in the Magistrate Judge's conclusion that Thompson's claim regarding the search of his co-defendant's cell phone is *Heck*-barred, but for slightly different reasons. The Report is

---

[1] The Court acknowledges that delays related to the prison mail system may limit the amount of time that Thompson has to prepare responses. [Record Document 10]. If Thompson feels that he has insufficient time to respond due to circumstances beyond his control, his remedy is to file a motion for an extension of the deadline to respond.

1

**REJECTED** as to Link's conduct related to the search of Thompson's electronics at the Houston International Airport (the "Airport Search"). All claims against Judge Minaldi, Namie, and Walker and all claims against Link other than those related to the Airport Search are **DISMISSED WITH PREJUDICE** to their being reasserted again until the *Heck* bar in this matter has been lifted.

I.   **Background**

After discovering a disturbing video on his wife's cell phone, Lloyd D. reported a possible crime to local police. [Record Document 8 at 3]. His wife, Rosalie D., was interviewed at the police station and her cell phone searched for evidence. [Record Document 67-1 at 2 in 2:14-cr-00074]. After a federal criminal complaint charged Thompson and Rosalie D. with attempted production of child pornography, this Court issued arrest warrants. [Record Documents 1, 4, and 5 in 2:14-cr-00074]. When Thompson landed at the Houston International Airport after a flight from Singapore, he was met by agents from the Department of Homeland Security ("DHS"). *United States v. Thompson*, 53 F. Supp. 3d 919, 920 (W.D. La. 2014). He was escorted to a room in the airport where Link, a special agent with Homeland Security Investigations, questioned him about the criminal complaint. [Record Document 1 at 6]. During this interview, agents seized two cell phones, a computer, and an external hard drive; they extracted and copied all of the data from these devices. *Thompson*, 53 F. Supp. 3d at 920. Link testified at Thompson's detention hearing that no child pornography was found on the devices. [Record Document 78 at 35 in 2:14-cr-00074].

Because the agents had neither a warrant nor Thompson's consent to access his data, Thompson filed a motion to suppress any evidence obtained from his devices. *Thompson*, 53

F. Supp. 3d at 920. Judge Minaldi, to whom the case was assigned, denied the motion. *Id.* at 923. The matter proceeded to trial, at which Walker and Namie represented the Government. [Record Document 1 at 19, 21]. The jury found Thompson guilty of one count of attempted use of a child to produce pornography and one count of attempting to entice a minor to engage in criminal sexual activity. *See United States v. Thompson*, 709 F. App'x 758, 761 (5th Cir. 2017). On appeal, Thompson alleged prosecutorial misconduct, misrepresentation of Rosalie D.'s plea agreement, insufficiency of the evidence, incorrect exclusion of a defense expert's testimony, and judicial bias. *Id.* at 761–65. The Fifth Circuit affirmed the conviction. *Id.* at 766. Thompson then brought a 28 U.S.C. § 2255 motion to vacate his sentence, reiterating many of his earlier claims and asserting additional claims of prosecutorial and judicial misconduct and ineffective assistance of counsel. [Record Document 249 in 2:14-cr-00074]. This Court denied the motion, and Thompson has appealed. [Record Documents 266 and 268 in 2:14-cr-00074].

Thompson now files a *Bivens* complaint[2] alleging that the investigation and prosecution of his offenses violated his constitutional rights. [Record Document 1]. In her Report and Recommendations, [Record Document 8 at 4], the Magistrate Judge concluded that Thompson's allegations challenge the validity of his conviction and as such are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Thompson's objection cites *Heck* once, [Record

---

[2] *Bivens* actions are the federal equivalent of 42 U.S.C. § 1983 actions. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Investigation*, 403 U.S. 388 (1971); *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). Although not every denial of a constitutional right can be vindicated through a *Bivens* action, *see, e.g., Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), *Bivens* provides a remedy for Fourth Amendment violations by federal agents, 403 U.S. at 397.

3

Document 9 at 16–17], but is otherwise nonresponsive to the Magistrate Judge's analysis.[3]

## II. *Heck* Standard

In *Heck*, the Supreme Court held that, in order to recover damages

> for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid[,] a § 1983 plaintiff must show that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–487. Thus, before considering the merits of a prisoner's § 1983 or *Bivens* claim, a district court must address a threshold question: "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

## III. Thompson's Global Objections

Thompson confusingly describes *Heck* as "a state case from an inmate that petitioned a Motion 2254" and contrasts this with his own § 2255 motion. [Record Document 9 at 16–17]. This Court construes Thompson's discussion of *Heck* as an argument that the case does not apply to federal inmates pursuing complaints against federal officers under *Bivens*. But, "*Heck* applies to *Bivens* actions." *Cronn v. Buffington*, 150 F.3d 538, 541 n.2 (5th Cir. 1998) (citing *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994)); *see Cardona v. United States*, 191 F. App'x 327, 328 (5th Cir. 2006) (per curiam) (applying *Heck* to the conduct of a federal prosecutor). Therefore, to the extent that Thompson is arguing that *Heck* is inapplicable, his argument fails.

Thompson may also be arguing that Magistrate Judge Kay should not have made

---

[3] It appears from his opposition that Thompson may have confused the instant action with the appeal of the denial of his § 2255 motion. Most of his arguments relate to the latter issue, which is not before this Court.

4

recommendations regarding a *Heck* bar to his *Bivens* action because she also recommended denying his § 2255 motion. [Record Document 9 at 17]. As a district judge reviews a magistrate judge's recommendations de novo, *see Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 381 (5th Cir. 2004) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)), Thompson's argument is without merit.

## IV. Trial-Related Claims

Thompson alleges that Defendants engaged in various sorts of misconduct in pretrial proceedings and at trial. [Record Document 1 at 5–25]. The Fifth Circuit has repeatedly held that claims alleging "ineffective assistance, prosecutorial misconduct, trial court error, judicial misconduct, juror misconduct, and wrongful incarceration are all barred by *Heck*." *Mouton v. Louisiana*, 547 F. App'x 502, 502 (5th Cir. 2013) (per curiam) (unpublished); *see also Smith v. Gambrell*, 108 F. App'x 218, 218–19 (5th Cir. 2004) (per curiam) (unpublished) ("[A]llegations of ineffective assistance and prosecutorial misconduct call into question the validity of [a] conviction."). The Fifth Circuit thus adopts a broad reading wherein all challenges to trial and pretrial proceedings must be analyzed under a *Heck* framework. In that light, this Court has no difficulty concluding that Thompson's claims of prosecutorial and judicial misconduct are potentially subject to the *Heck* bar.

As Thompson's conviction has not been overturned, the Magistrate Judge did not err in finding that his claims against Judge Minaldi, Walker, and Namie are barred by *Heck* nor did she err in concluding that claims related to Link's trial testimony are also barred. [Record Document 8 at 4]. These claims are legally frivolous. *See Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). The Court accordingly **ADOPTS** the Report and Recommendations in these

respects.

## V. Search-Related Claims

### A. Applying *Heck* to Fourth Amendment Claims

Thompson's complaint also challenges the Airport Search and a search of Rosalie D.'s cell phone. [Record Document 1 at 3, 6–10]. Under the Fourth Amendment, searches must be reasonable and, unless an exception applies, conducted in accordance with a warrant supported by probable cause. U.S. Const. amend. IV; *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). As a general rule, evidence obtained in violation of the Fourth Amendment must be excluded from a criminal trial. *See United States v. Leon*, 468 U.S. 897, 908–09 (1984) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

In *Heck*, the Supreme Court observed in a footnote:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction is overturned).

512 U.S. at 487 n.7 (internal citations omitted). Harmless errors occur "during the presentation of the case to the jury." *Arizona v. Fulminante*, 499 U.S. 279, 307 (1991). Similarly, the doctrines of independent source and inevitable discovery are not exceptions to the Fourth Amendment, but rather to the exclusionary rule. *See Murray v. United States*, 487 U.S. 533, 537–39 (1988). What the footnote means, then, is that *Heck* bars review of those errors related to prosecutorial or judicial decisions affecting the progress of a trial, but not review of Fourth Amendment

6

violations that are compatible with a valid conviction. Hence, if illegally obtained evidence was not used at trial, was unnecessary to the conviction (i.e., its admission was harmless error), or was admissible under an exception to the exclusionary rule, *Heck* does not bar a civil suit to recover damages for the underlying Fourth Amendment violation.

The Fifth Circuit has not always been crystal clear in its treatment of Fourth Amendment issues under *Heck*. In some of its earliest post-*Heck* cases, the Fifth Circuit reached seemingly contradictory holdings. In *Lyle v. Dedeaux*, the police arrested the plaintiff for selling marijuana and during a subsequent consent search seized drugs and drug paraphernalia as well as noncontraband personal possessions. 39 F.3d 320 (5th Cir. 1994) (per curiam) (unpublished table decision). The Fifth Circuit concluded that the *Heck* bar did not apply to a § 1983 suit to recover damages for the wrongful seizure of the personal possessions because those objects played no role in the plaintiff's conviction. *Id.* Five months later, the Fifth Circuit applied *Heck* to an allegedly illegal arrest in *Mackey v. Dickson*. 47 F.3d 744 (5th Cir. 1995) (per curiam). The court held that if evidence obtained from the arrest was not presented at the arrestee's criminal trial, a cause of action lay under § 1983 for the arrest itself. *Id.* at 746.

In the next month, another panel reached the apparently opposite conclusion in *Jackson v. Vannoy*. 49 F.3d 175 (5th Cir. 1995) (per curiam). In that case, the plaintiff alleged that law enforcement had conducted an illegal stop of a car in which he was a passenger and then arrested him without probable cause. *Id.* at 176. The charges stemming from the arrest resulted in the revocation of the plaintiff's probation and parole. *Id.* The Fifth Circuit held that a "judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity

7

of the revocation of his probation and parole." *Id.* at 177 (citing *Thomas v. State*, 572 S.W.2d 507, 509 (Tex. Crim. App. 1976); *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990)). *Jackson* could be read to stand for the proposition that Fourth Amendment challenges to police misconduct during an investigation that results in a conviction are always barred by *Heck*, but such a reading cannot be correct. For one thing, *Heck* specifically invokes two sub-classes of Fourth Amendment violations to which the bar does <u>not</u> apply (i.e., those in which the illegally obtained evidence is admissible under the independent source or inevitable discovery doctrines). 512 U.S. at 487 n.7. In addition, the thrust of *Jackson* was that *Heck* applies to revocations as well as to convictions. *See* 49 F.3d at 177. The court was not especially concerned with the use or admissibility of particular sorts of evidence. Finally, even if *Jackson* did stand for the proposition that *Heck* shields all misconduct during an investigation that leads to a conviction, the rule of orderliness would compel this Court to follow *Mackey*. *See, e.g.*, *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (per curiam) (citing *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

In a recent case, the Fifth Circuit applied *Mackey* to an allegedly unlawful search and seizure, holding that a *Bivens* claim against Securities and Exchange Commission agents

> is *Heck*-barred if evidence that was a direct or indirect product of the allegedly unlawful search and seizure was presented in the plaintiff's criminal conviction proceeding. If, however, the illegally obtained evidence is admissible under the independent source or inevitable discovery doctrine, or if the evidence's admission is deemed harmless, Blimline's claims would not necessarily imply the invalidity of his convictions.

*Blimline v. Thirty Unknown Emps. of the Sec. & Exchange Comm'n*, 757 F. App'x 299, 302 (5th Cir. 2018) (per curiam) (unpublished). Therefore, this Court holds that *Heck* does not bar a § 1983 or *Bivens* claim arising from an allegedly unlawful search if (1) the evidence obtained was not

8

introduced at trial; (2) the evidence was erroneously admitted but the error was harmless; or (3) the evidence was admissible under an exception to the exclusionary rule. Extending the third category to all exceptions to the exclusion rule, rather than only to evidence admissible pursuant to the independent source and inevitable discovery doctrines, is a slight extension of the *Heck* footnote. Nevertheless, this extension is justified by the Supreme Court's logic that a § 1983 suit can reach misconduct that did not affect the state's ability to obtain a conviction. *See Heck*, 512 U.S. at 487 & n.7. Because good faith is an exception to the exclusionary rule, *Leon*, 468 U.S. at 913, a suit based on a good-faith search that may have been illegal is not barred by *Heck*.

### B. Search of Rosalie D's Cell Phone

Thompson contends that local police violated the Fourth Amendment by searching Rosalie D.'s cell phone before obtaining her consent. [Record Document 1 at 9]. If a suit regarding this search is barred by *Heck*, then it must be dismissed until Thompson's conviction is overturned. If the evidence obtained from Rosalie D.'s cell phone would fall under one of the three exceptions to the *Heck* bar, Thompson still could not recover for "the 'injury' of being convicted and imprisoned." *Heck*, 512 U.S. at 487 n.7. He could only recover for an "actual, compensable injury." *Id.* As Thompson had no reasonable expectation of privacy in messages from him stored on Rosalie D.'s cell phone, his Fourth Amendment rights were not violated. *See United States v. Bereznak*, 2018 WL 1993904, at *3 (M.D. Pa. Apr. 27, 2018). Hence, the search of her cell phone cannot have personally injured him within the meaning of *Heck*. Article III standing requires a "particularized" injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In the absence of

9

a violation of his Fourth Amendment rights, Thompson has no such injury. He therefore has no standing to pursue a claim under any of the exceptions to *Heck* and so cannot proceed with any claims related to the search of Rosalie D.'s cell phone unless and until his conviction is overturned.

C. **The Airport Search**

Thompson has alleged that DHS agents violated the Fourth Amendment by searching his electronic devices at the airport without a warrant or reasonable suspicion. [Record Document 1 at 5–10]. The Supreme Court has long maintained that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Borders include not only territorial boundaries, but also their "functional equivalent . . . such as . . . the airport where an international flight lands." *United States v. Flynn*, 664 F.2d 1296, 1306 (5th Cir. 1982) (quoting *United States v. Richards*, 638 F.2d 765, 771 (5th Cir. Mar. 1981)). Agents intercepting passengers arriving on international flights thus have expansive powers to engage in suspicionless searches. *See Flores-Montano*, 541 U.S. at 155; *Flynn*, 664 F.2d at 1306. To counter this precedent, Thompson argues that agents must have at least reasonable suspicion in order to use the border search exception to conduct a search more extensive than "opening and perusing file[s] with icons located on the computer's desktop." [Record Document 1 at 8].

Thompson's argument appears to be based on the Supreme Court's decision in *Riley v. California*. *See* 573 U.S. 373 (2014). In *Riley*, the Supreme Court held that before searching the

data stored on a cell phone seized incident to an arrest, law enforcement generally must obtain a warrant. *Id.* at 403. Nevertheless, "no circuit court, before or after *Riley*, has required more than reasonable suspicion for a border search of cell phones or electronically-stored data." *United States v. Wanjiku*, 919 F.3d 472, 485 (7th Cir. 2019) (collecting cases). Though the circuits agree that no warrant is required to search electronics pursuant to the border search exception, *see United States v. Molina-Isidoro*, 884 F.3d 287, 292 (5th Cir. 2018) (collecting cases), the circuits have split on the question of whether an agent needs individualized suspicion before commencing such a search. The Eleventh Circuit has taken the position that "no suspicion is necessary to search electronic devices at the border," *United States v. Touset*, 890 F.3d 1227, 1229 (11th Cir. 2018), while the Fourth and Ninth Circuits have held that reasonable suspicion is required for a "forensic" search of a cell phone or computer crossing an international border, *United States v. Kolsuz*, 890 F.3d 133, 144 (4th Cir. 2018); *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013).

When confronted with this issue in *United States v. Molina-Isidoro*, the Fifth Circuit declined to decide the constitutional question. *See* 884 F.3d at 290. After locating methamphetamine in a suitcase that the defendant had carried across the Texas-Mexico border, border agents scrolled through apps on her cell phone without her consent. *Id.* at 289. The Fifth Circuit held that the agents had probable cause and that they had acted in good faith when searching the phone without a warrant. *Id.* at 291, 293. The court thus did not have to determine if *Riley* mandates reasonable suspicion or a warrant for border searches of electronic devices. *Id.* at 293; *see also Wanjiku*, 919 F.3d at 489 (deploying the good-faith exception to avoid deciding the level of suspicion required for forensic searches of electronics at the

11

border).

This Court will adopt a similar reticence because the factual record is insufficiently developed and because the application of *Riley* to border searches is currently subject to extensive debate and litigation.[4] Although Thompson alleges that the contents of his computer, hard drive, and cell phones were copied and downloaded by the DHS agents, [Record Document 1 at 6], the precise extent of the search has not been factually established. When denying Thompson's motion to suppress, Judge Minaldi described the agents "completely downloading and copying" all of the data contained on Thompson's devices, 53 F. Supp. 3d at 921, but Link's testimony suggests that additional analysis might have been performed on the seized data, [Record Document 78 at 35]. This fact is significant because a different standard might apply to a "forensic" search of an electronic device as opposed to a less invasive "manual" search. *See Molina-Isidoro*, 884 F.3d at 293 (citing *Cotterman*, 709 F.3d at 962; *United States v. Saboonchi*, 990 F. Supp. 2d 536, 569–70 (D. Md. 2014)). This Court also lacks the information it would need to make a legally supportable determination that the DHS agents were acting in good faith or that they had reasonable suspicion to support the search of Thompson's electronics. Finally, it is unclear whether evidence from the Airport Search was introduced at Thompson's criminal trial and how that evidence, if used, figured into the overall strength of the Government's case. The absence of the facts necessary to apply any constitutional decision on the relationship of *Riley* to the border search exception or to determine the applicability of the *Heck* bar thus counsels against reaching the constitutional

---

[4] *See, e.g.*, Matthew S. Schwartz*, ACLU: Border Agents Violate Constitution When They Search Electronic Devices*, NPR (May 2, 2019, 5:10 AM), https://www.npr.org/2019/05/02/719337356/aclu-border-agents-violate-constitution-when-they-search-electronic-devices.

holding at present.

To sum up, if the search of Thompson's computer and cell phones violated the Fourth Amendment, this Court must apply *Heck*. To do so, this Court must determine whether the good-faith exception applies and whether the admission of the evidence was harmless. If the search did not violate the Fourth Amendment, then there is no basis for *Bivens* liability at all. Determining whether the Fourth Amendment was violated, whether the DHS agents acted in good faith, and whether any use of the evidence obtained was harmless all require facts that are not presently before this Court. As a result, this Court declines to apply the *Heck* bar to the claims against Link related to the Airport Search. When it has more information, this Court will reconsider this issue.

Nevertheless, the Court wishes to offer Thompson, a self-represented litigant, a few words of caution. The Fifth Circuit has denied his direct appeal. *Thompson*, 709 F. App'x 758. The Supreme Court declined to grant a writ of certiorari. [Record Document 246 in 2:14-cr-00074]. This Court has determined that Thompson is not entitled to habeas relief and denied a certificate of appealability. [Record Documents 266 and 267 in 2:14-cr-00074]. Only if the Fifth Circuit or Supreme Court reverses this Court's judgment on his § 2255 motion will he surmount the *Heck* bar.

The only claim that currently survives is one against Link for the Airport Search. **If the Fifth Circuit does not overturn his conviction, Thompson cannot recover any damages related to his arrest, trial, conviction, or incarceration**. Similarly, unless his conviction is overturned, he cannot recover damages for any conduct of Judge Minaldi, Namie, or Walker. If his conviction stands, the only damages that Thompson might recover are those directly

13

related to the Airport Search, and those damages are by no means certain. Thompson has alleged only that the data from his electronic devices "was disseminated and <u>possibly</u> disclosed to other United States government or foreign agencies that in turn <u>may</u> have retained that information." [Record Document 1 at 17 (emphasis added)]. Speculative injuries will not support an award of compensatory damages. *See BellSouth Telecomms., Inc. v. Johnson Bros. Corp. of La.*, 106 F.3d 119, 127 (5th Cir. 1997); *Calloway v. Abbott*, No. 07-1101, 2008 WL 819312, at *10 (E.D. La. Mar. 24, 2008).

**VI.** **Conclusion**

In light of the foregoing, **IT IS ORDERED** that the Magistrate Judge's Report and Recommendations [Record Document 8] is **ADOPTED IN PART** and **REJECTED IN PART**. It is **REJECTED** as to Thompson's claims against Link arising from the Airport Search. The Court **CONCURS** in the result as to the search of Rosalie D.'s cell phone but for the reasons discussed above. The Report is **ADOPTED** in all other respects.

**IT IS FURTHER ORDERED** that all claims against Judge Minaldi, Namie, and Walker and all claims against Link other than those related to the Airport Search are **DISMISSED WITH PREJUDICE** to their being reasserted again until the *Heck* bar in this matter has been lifted.

This matter is **REFERRED** to the Magistrate Judge for further proceedings.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 4th day of June, 2019.

_____
**ELIZABETH E. FOOTE**
**UNITED STATES DISTRICT JUDGE**

14